[Cite as *State ex rel. Ohio Soc. for Prevention of Cruelty to Animals, Inc. v. Harrison Cty. Bd. of Commrs.*, 2011-Ohio-6029.]

STATE OF OHIO, HARRISON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, ex rel. THE OHIO SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, INC., | ) ) ) | CASE NO.   10 HA 2 |
| | ) | |
| RELATOR, | ) | |
| | ) | OPINION |
| - VS - | ) | AND |
| | ) | JUDGMENT ENTRY |
| BOARD OF COMMISSIONERS, et al., | ) | |
| | ) | |
| RESPONDENTS. | ) | |

CHARACTER OF PROCEEDINGS:     Petition for Writ of Mandamus.

JUDGMENT:     Petition for Writ of Mandamus Granted in part; Denied in part.

APPEARANCES:
For Relator:     Attorney John Bell
2700 East Main Street, Suite 207
P.O. Box 091022
Bexley, Ohio  43209

For Respondents:     Attorney T. Shawn Hervey
Prosecuting Attorney
Attorney Michael Washington
Assistant Prosecuting Attorney
111 West Warren Street
P.O. Box 248
Cadiz, Ohio  43907

JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated:  November 21st, 2011

PER CURIAM.

¶{1}   In August 2010, Relator The Ohio Society for the Prevention of Cruelty to Animals, Inc., filed the instant mandamus action seeking an ordering forcing Respondents Harrison County Board of Commissioners and the Harrison County Dog Warden to comply with its request for public records and to comply with the requirements in the Ohio Revised Code for operating a dog pound. Respondents responded to the petition and filed a motion to dismiss. We denied the motion to dismiss and issued a discovery schedule. Following discovery, the parties filed motions for summary judgment asserting their respective positions as to why the petition for a writ of mandamus should or should not be granted.

¶{2}   It is settled law that in order for a writ of mandamus to issue, Relator must demonstrate: (1) that Relator has a clear legal right to the relief prayed for; (2) that Respondents are under a clear legal duty to perform the acts requested; and (3) that Relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle* (1983), 6 Ohio St.3d 28.

¶{3}   Civ.R. 56(C) provides that summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. See, also, *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66.

¶{4}   The arguments presented in the petition for a writ of mandamus and the parties' motions for summary judgment can be divided into two parts – public records request and compliance with the Ohio Revised Code for the operation of the dog pound. Each will be addressed in turn.

<u>Public Records</u>

¶{5}   In the motion for summary judgment, Relator asserts that Respondents failed to comply with the R.C. 149.43 public records request. Respondents admit that summary judgment should be granted in Relator's favor on this claim. It asserts:

¶{6} "Although records were provided by Respondents, they were not provided in a timely fashion, and no appropriate explanation was provided as to records that did not exist or were not provided. As such Respondents must submit to a finding of Summary Judgment as to that portion of this cause of action.

¶{7} "Defendants-Respondents request a hearing to be held to determine an appropriate sanction and reasonable attorney fees under the public records law. Respondents believe that the appropriate sanction is the $1,000.00 maximum allowable by law."

¶{8} There are requirements in Revised Code Chapter 955, titled Dogs, that the Dog Warden is to keep certain records. For instance, under R.C. 955.12, a dog warden "shall make a record of all dogs owned, kept, and harbored in their respective counties." R.C. 955.12 further requires a dog warden or his deputies to "make weekly reports, in writing, to the board [of commissioners] in their respective counties of all dogs seized, impounded, redeemed, destroyed, and of all claims for damage to animals, fowl or poultry inflicted by dogs." R.C. 955.16(E) provides that "[a] record of all dogs impounded, the disposition of the same, the owner's name and address, if known, and a statement of costs assessed against the dogs shall be kept by the poundkeeper, and the poundkeeper shall furnish a transcript thereof to the county treasurer quarterly." See, also, *State ex rel. Keating v. Skeldon*, 6th Dist. No. L-08-1414, 2009-Ohio-2052, ¶18.

¶{9} The parties agree that Respondents did furnish quarterly reports, however, the reports did not contain all the necessary information. It is unclear whether Respondents withheld the report that contained all required reporting information or whether the records being kept were not in accordance with the requirements in Revised Code Chapter 955. Regardless, since Respondents admit its failure to comply, summary judgment is granted on the public records request. Furthermore, as Respondents acknowledge Relator is entitled to the maximum amount of statutory damages and reasonable attorney fees. R.C. 149.43(C)(1).

## Operation of Dog Pound

¶{10} The arguments concerning the operation of the dog pound encompasses many subarguments regarding certain alleged requirements in Revised Code Chapter

955 and 959. These include record keeping, notice of redemption, application of Revised Code Chapter 959 to Respondents, euthanasia, veterinary care, posting hours of operation, and funding. Each will be addressed in turn.

## Record Keeping

¶{11} The first argument made by Relator is that the dog pound's record keeping does not comply with Revised Code Chapter 955. Respondents concede that it has not previously complied with Revised Code Chapter 955 in keeping the appropriate records and that there is clear legal duty to keep such records. As previously discussed under the public records analysis there is a clear legal duty to keep records and Respondents have failed to comply with that duty. As such, we are in agreement with both parties that a writ must be ordered on this issue.

## Notice of Redemption

¶{12} Relator's second argument as to the operation of the dog pound concerns Respondents compliance with R.C. 955.12's requirement that owners of impounded dogs must be given notice of the impoundment and ability of redemption. Throughout the proceedings, Respondents have admitted that it does not notify the owner by certified mail of the impoundment. (Depo. Of Barbara Pincola, Commrs. Pg 27). Rather, it telephones the owner.

¶{13} "A.(Commissioner Pincola) I mean, you have to understand what I said earlier that we are funded by dog license, $12 a dog, and we – and that is one person that we have who is taking care of all the dogs and doing all – you know, the runs and verifying all of this and then trying to get this in there. We don't have a budget. That's why we use the phone, and it works. We are a small enough county that – like he said, half the time you see the dog and you go, oh, Joe's dog's loose again, and you just drop it back off to Joe because its' just the way this – these smaller rural areas operate." (Depo. 28).

¶{14} R.C. 955.12 states, in pertinent part:

¶{15} "Whenever any person files an affidavit in a court of competent jurisdiction that there is a dog running at large that is not kept constantly confined either in a registered dog kennel or on the premises of an institution or organization of the type described in section 955.16 of the Revised Code or that a dog is kept or

harbored in the warden's jurisdiction without being registered as required by law, the court shall immediately order the warden to seize and impound the dog. Thereupon the warden shall immediately seize and impound the dog complained of. The warden shall give immediate notice by **certified mail** to the owner, keeper, or harborer of the dog seized and impounded by the warden, if the owner, keeper, or harborer can be determined from the current year's registration list maintained by the warden and the county auditor of the county where the dog is registered, that the dog has been impounded and that, unless the dog is redeemed within fourteen days of the date of the notice, it may thereafter be sold or destroyed according to law. If the owner, keeper, or harborer cannot be determined from the current year's registration list maintained by the warden and the county auditor of the county where the dog is registered, the officer shall post a notice in the pound or animal shelter both describing the dog and place where seized and advising the unknown owner that, unless the dog is redeemed within three days, it may thereafter be sold or destroyed according to law." (Emphasis added).

¶{16} Given the language of the statute, certified mail is required. We cannot find that a phone call is equivalent to the certified mail requirement. While the budgets of these more rural counties are clearly limited, we cannot change the clearly mandated requirement of certified mail. The general assembly can rewrite the law, not this court. Thus, calling an owner does not comply with R.C. 955.12's mandate that the dog warden is to notify the owner of a seized and impounded dog by certified mail of the dog's impoundment and the owner's ability to redeem the dog. Accordingly, based upon that statute and Respondents' acknowledgment that it is not fully complying with the statute, a writ of mandamus is warranted on this issue.

Application of Revised Code Chapter 959 to Respondents

¶{17} Under this argument, Relator asserts that Revised Code Chapter 959 and its prohibitions against animal cruelty apply to Respondents. Respondents assert that Revised Code Chapter 959 is a criminal statute and the determination of whether anyone, including the dog warden, has committed an act in violation of that Chapter is for the county prosecutor to determine, not this court.

¶{18} Revised Code Chapter 959 is titled Offenses Related to Domestic Animals. It contains criminal statutes. Respondents are correct that a writ of mandamus is not the appropriate vehicle for this court to issue a finding that a person or government entity violated a criminal statute. Furthermore, mandamus will not issue to compel someone to follow the law generally. *State ex rel. Lewis v. Bd. of Jackson Cty. Commrs.*, 4th Dist. No. 98CA830, 2002-Ohio-1424. Thus, we will not issue mandamus to state that Revised Code Chapter 959 applies to Respondents or to state that Respondents, either in their public positions or as individual citizens violated Revised Code Chapter 959.

¶{19} That said, when dissecting the arguments it appears what Relator is actually asserting is that there is a clear legal duty for Respondents to provide a "suitable" pound. In asserting that, it contends that R.C. 959.131 should be used to determine what is "suitable" and that the Harrison County Dog Pound is not suitable because it violates R.C. 959.131. In the complaint, and in affidavits attached to the response to the motion to dismiss, there were allegations that the facility had no exterior walls or heat, the pens were not cleaned (they were covered in dog feces and urine), and there were no attempts to sanitize the pens. There was an allegation that because of the lack of shelter that a dog got frost bite. Relator contends that some of these, if not all, constitute animal cruelty as defined by R.C 959.131, and as such, Harrison County Pound is not "suitable."

¶{20} Relator is correct that there is a clear legal duty to provide a "suitable" pound. R.C. 955.15, which all parties agree is applicable, states:

¶{21} "The board of county commissioners shall provide nets and other suitable devices for the taking of dogs in a humane manner, provide a suitable place for impounding dogs, make proper provision for feeding and caring for the same, and provide humane devices and methods for destroying dogs."

¶{22} However, Revised Code Chapter 955 does not define the word "suitable."

¶{23} R.C. 959.131, which is the companion animal cruelty statute (which applies to dogs), states:

¶{24} "(C) No person who confines or who is the custodian or caretaker of a companion animal shall negligently do any of the following:

¶{25} "(1) Torture, torment, needlessly mutilate or maim, cruelly beat, poison, needlessly kill, or commit an act of cruelty against the companion animal;

¶{26} "(2) Deprive the companion animal of necessary sustenance, confine the companion animal without supplying it during the confinement with sufficient quantities of good, wholesome food and water, or impound or confine the companion animal without affording it, during the impoundment or confinement, with access to shelter from heat, cold, wind, rain, snow, or excessive direct sunlight, if it can reasonably be expected that the companion animal would become sick or suffer in any other way as a result of or due to the deprivation, confinement, or impoundment or confinement in any of those specified manners."

¶{27} Relator cites this court to an Ohio Attorney General opinion for an indication that R.C. 959.131 can be used to define a "suitable" place of impoundment. *The Honorable Kevin J. Baxter*, 1995 Ohio Op. Atty. Gen. 95-021. In that case, the attorney general was asked to define what "suitable place" as used in R.C. 955.15 meant. The attorney general indicated that "suitable place" was not defined by statute and thus common usage should be used to determine what it means. Id. It then referenced Black's Law Dictionary's definition as "fit and proper for the end in view." Id. It then drew the conclusion that "with respect to a dog pound, the board of county commissioners has the discretion to determine what is suitable, so long as the place provided has, at a minimum, the features necessary to enable the county or its officers and agents to fulfill their mandatory duties with respect to the impoundment of dogs." Id.

¶{28} The opinion goes on to discuss that a dog pound is required to keep a dog from 3 to 16 days and in some cases longer if the dog was treated inhumanely by its owner. Id. In that case, the animal would be held until animal cruelty charges were resolved. The opinion then references R.C. 959.13, which is the general law on cruelty to animals. The attorney general then concluded:

¶{29} "Stated affirmatively, the facility must be a place where it is possible to provide the impounded dogs with a sufficient quantity of good wholesome food and

water, access to shelter from wind, rain, snow or excessive direct sunlight; wholesome exercise and change of air, and freedom from unnecessary pain and suffering." Id.

¶{30} While the above case discusses R.C. 959.13, the general law on cruelty to animals, and does not discuss R.C. 959.131, the companion animal cruelty statute, we do not find that that difference makes the reasoning less persuasive. R.C. 959.13 and R.C. 959.131 contain the same requirements regarding shelter for an animal.

¶{31} That said, in 2002, the Fourth Appellate District reviewed the Attorney General's *Baxter* opinion. *Lewis*, 4th Dist. No. 98CA830, 2002-Ohio-1424. It found that the *Baxter* opinion was not enlightening:

¶{32} "The Attorney General's opinion is a simple restatement of the statute, with little guidance as to what conditions might make the facility unsuitable or result in 'cruelty to animals.' Relator has not introduced any evidence of specific standards or minimum conditions that characterize or identify a 'suitable place,' or introduced specific evidence of general operations that may constitute cruelty to animals, except for conditions surrounding the pound's drop-off capability and allegations of unlawful and inhumane destruction of dogs, which are addressed below. Absent any controlling case law, mandatory guidelines in the statute or some evidence that defines a suitable place, we cannot issue a writ. Mandamus will not issue to compel Respondents to follow the law generally. *Cullen v. State* (1922), 105 Ohio St. 545. Had we been presented with some evidence of well-recognized minimum standards or specific evidence of cruelty, our decision might be otherwise. However, under the existing record, the commissioners of the county in which the dog pound is located are in a better position to determine what type of facility will fulfill their county's needs." Id. at ¶21.

¶{33} Here, we have allegations of unsanitary conditions and no shelter. Thus, we find the case at hand to be distinguishable from *Lewis* because there are specific allegations of unsuitableness. Furthermore, although the Attorney General's *Baxter* opinion is not binding, we find its reasoning to be logical. A suitable dog pound must be a place that would not constitute cruelty to the dog as defined in R.C. 959.131. Therefore, to a certain extent R.C. 959.131 is applicable to the dog warden; its applicability is to give guidance of what is a suitable place to impound a dog.

**¶{34}** The information obtained through affidavits attached to Relator's filings indicates that the alleged inhumane conditions and unsuitability of the pound occurred under prior warden, Carl Stewart. Respondents assert that improvements have been made to the pound, including a new warden. Its filings confirm such a position.

**¶{35}** Attached to the January 31, 2011, Response to the Request for Production of Documents is the Harrison County Dog Pound Operational Manual and pictures of the dog pound taken on January 10, 2011, which are accompanied by an affidavit from the county prosecutor authenticating the pictures. Also, attached to Respondents' Reply to Relator's Motion in Opposition to Respondents' Motion for Summary Judgment is an affidavit from the current dog warden and pictures showing the condition of the pound on June 24, 2011.

**¶{36}** At the outset, it must be noted that the documentation attached to the reply should have been attached to Respondents' Motion in Opposition to Relator's Motion for Summary Judgment and its own Motion for Summary Judgment. That said, considering that the pictures and accompanying affidavit are proper evidence under Civ.R. 56, we will consider them.

**¶{37}** Current dog warden Tina DeWalt's affidavit provides:

**¶{38}** "3.  In performance of my duties I clean and sanitize all cage holding impounded dogs at least once per day and feed all dogs two times daily, including Saturdays and Sundays. If I am not available for the aforementioned cleaning and feeding, it is performed by a volunteer.

**¶{39}** "4.  Over and above my statutory duties I walk all impounded dogs daily and also provided them with exercise time in the dog pound fenced in grass area.

**¶{40}** "5.  From June 2010 through 24 June 2011, the Harrison County Dog Pound has successfully placed 163 dogs through adoption either to the general public or through rescue organizations. Zero dogs have been euthanized during the same period of time.

**¶{41}** "6.  The attached photographs marked as exhibits A, B, C, and D are fair and accurate depictions of the Harrison County Dog Pound as it appeared on 24 June 2011, and have not been doctored or modified in any way. Said photographs show the cleanliness and general condition of the dog pound."

**¶{42}** This affidavit provides that the animals are fed and the pound is cleaned. The Dog Pound Manual, attached to the Response to the Request for Production of Documents, also provides that the Pound is cleaned and Dogs are Fed. The Manual is even more specific in the manner of cleaning. For instance, it provides that hot water and disinfectant is to be used on the run/kennel/boxes and that the food and water for consumption at no time is to be exposed to disinfectant.

**¶{43}** The January and June 2011 pictures do appear to depict a clean dog pound, albeit smells cannot be depicted from pictures. It appears that the pound does provide some pens that are inside. Other pens could be classified as semi-outside. These pens are located in a structure that could be described as a shelter – there is a roof, but not sides on the building. The pens that are located in the shelter have dog houses in each pen. There are other pens that are entirely outside, but these pens have what appears to be a tarp covering them for protection from the elements. These pens, like the semi-outside pens, have dog houses in them.

**¶{44}** All the above demonstrates that the pound is suitable as defined by the Attorney General's *Baxter* opinion; the affidavit of the current dog warden and the pictures show that the dogs are being fed and watered, have exercise and have a shelter. Nowhere in the statute does it say that a dog must be kept in an inside facility. The statute reads that there must be shelter from nature's elements if it can reasonably be expected that the animal would otherwise become sick or in some other way suffer. That shelter can be a "man-made enclosure, windbreak, sunshade or natural windbreak or sunshade that is developed for the earth's contour, tree development or vegetation." R.C. 959.131(A)(2). The semi-enclosed shelter that has dog houses in each pen provides such shelter. The same can be said for the outdoor pens. Those pens do provide protection from the elements by means of a tarp. There is nothing in the statute to remotely indicate that such structures are not shelters.

**¶{45}** We acknowledge that Relator filed a supplemental reply in response to Respondents' reply to summary judgment. Attached to the supplemental reply are a picture and a Facebook print out. These items are not proper evidence for summary judgment under Civ.R. 56. They are not accompanied by an affidavit, nor were they exhibits admitted and used during a deposition. Without an affidavit accompanying the

picture, we cannot be sure if it is of the Harrison County Dog Pound and when it was taken. Furthermore, even if we could consider the picture, it is dark and it is unclear exactly what it is supposed to be depicting.

¶{46} Therefore, given the evidence submitted, summary judgment on this issue is granted to Respondents. We will not issue a writ ordering Respondents to provide a suitable dog pound, since the authenticated pictures and affidavit demonstrate a suitable dog pound. That said, given Respondents acknowledgement of practices that occurred under prior wardens, some of which may very well constitute unsuitability, we caution Respondents to maintain a suitable pound or a writ could be issued against them in future litigation.

Euthanasia

¶{47} There are allegations in the petition for a writ of mandamus about unnecessary killing of dogs and of use of a homemade gas box to kill the dogs. Starting with the gas box, it is alleged that this is not a humane way to destroy a dog and violates R.C. 955.16(F), which provides:

¶{48} "No person shall destroy any dog by the use of a high altitude decompression chamber or by any method other than a method that immediately and painlessly renders the dog initially unconscious and subsequently dead."

¶{49} The evidence indicates that the gas box is no longer used and has been scrapped. (Piccola Depo. 51). The filings also indicate that the means of euthanasia will be injection. Dog Pound Manual attached to Response to Production of Documents. Thus, any allegation that Respondents are violating a clear legal duty euthanizing a dog through a homemade gas box is moot.

¶{50} As to unnecessary killings, this argument encompasses the allegation that dogs were destroyed prior to the mandated time limits for redemption. Revised Code Chapter 955 does mandate how many days a dog must be kept before it is destroyed. The affidavit of the current warden establishes that no dogs have been euthanized from June 2010 until June 24, 2011. Therefore, it does not seem that there have been any unnecessary killings. However, as previously indicated, in the past proper records were not kept. Thus, it is difficult to determine if the dogs were

kept the required time.  Given the lack of record keeping, Respondents concede that a writ should be issued as to unnecessary killings.

¶{51}  Accordingly, given Respondents concession and the lack of records, we will issue a writ on this matter.  However, our order will not encompass a mandate that a healthy dog cannot be destroyed.  Relator is of the position that destruction of a healthy dog is inhumane and constitutes an unnecessary killing.  We disagree.  R.C. 955.16 provides that a healthy dog may be destroyed humanely if all efforts to place the dog have failed and the time period mandated in that statute has expired.  Thus, as that statute clearly permits destruction, we cannot issue a writ contrary to the general assembly's mandate.

Veterinary Care

¶{52}  Relator asserts that Respondents have a duty to provide veterinary care for injured or distressed dogs.  An express duty to provide veterinary care is listed under R.C. 955.16.  It states:

¶{53}  "(A) Dogs that have been seized by the county dog warden and impounded shall be kept, housed, and fed for three days for the purpose of redemption, as provided by section 955.18 of the Revised Code, unless any of the following applies:

¶{54}  "(1) Immediate humane destruction of the dog is necessary because of obvious disease or injury.  If the diseased or injured dog is registered, as determined from the current year's registration list maintained by the warden and the county auditor of the county where the dog is registered, the necessity of destroying the dog shall be certified by a licensed veterinarian or a registered veterinary technician.  If the dog is not registered, the decision to destroy it shall be made by the warden."

¶{55}  There are no clear specific allegations that this duty was violated.  Despite that, Relator asserts, "Respondents do not advance any argument as to how they could operate a 'suitable place' for impoundment of animals which does not violate Chapter 959 of the Revised Code without veterinary participation beyond the express requirements of section 955.16(A)(1)."

¶{56}  The problem with this position is that there must be a clear legal duty for veterinarian participation and a violation of that duty before this court can issue a writ.

The only required veterinarian participation in Revised Code Chapter 955 is in R.C. 955.16. Furthermore, nowhere in R.C. 959.131 does it require veterinarian participation for the pound to be a "suitable place." Likewise, the Attorney General's *Baxter* opinion did not explicitly require veterinarian participation. All that was required is freedom from unnecessary pain and suffering. *The Honorable Kevin J. Baxter*, supra. Freedom from unnecessary pain and suffering does not necessarily require veterinarian participation. Some injuries or ailments may be able to be cared for by the warden. Thus, it would be a discretionary decision as to whether a veterinarian is needed. Therefore, as it is discretionary, we cannot find that there is a clear legal duty requiring veterinary participation other than that in R.C. 955.16(A). Furthermore, as there is no clear allegation of how the duty under R.C. 955.16(A) was violated, a writ of mandamus does not lie. Accordingly, summary judgment on this issue is granted in favor of Respondents.

<u>Posted Hours of Operation</u>

¶{57} In *Lewis*, the court issued a mandamus on posting hours of operation. It explained:

¶{58} "According to R.C. 955.15, the county commissioners 'shall provide * * * for the taking of dogs in a humane manner, provide a suitable place for impounding dogs, make proper provision for feeding and caring for the same, and provide humane devices and methods for destroying dogs.' Nothing in this statute expressly requires the commissioners or the dog warden to post the pound's operational hours. However, it would seem implicit to post the hours for the public's convenience given owners' rights of redemption under R.C. 955.12, 955.16 and 955.18. Those redemption rights may be severely limited if the hours of operation of the pound are limited as respondents have admitted. Accordingly, we issue a writ of mandamus requiring the commissioners to post the pound's operational hours, including those times when someone is normally there, and phone number." *Lewis*, supra, ¶22.

¶{59} We find this reasoning to be sound and adopt as our own. Accordingly, issuance of a writ of mandamus on this issue is warranted.

<u>Funding</u>

¶{60} Relator appears to assert that the dog pound is underfunded and that the Commissioners must provide more funding for the dog pound.

¶{61} R.C. 955.20 provides:

¶{62} "The registration fees provided for in sections 955.01 to 955.14 of the Revised Code constitute a special fund known as 'the dog and kennel fund.' The fees shall be deposited by the county auditor in the county treasury daily as collected and shall be used for the purpose of defraying the cost of furnishing all blanks, records, tags, nets, and other equipment, for the purpose of paying the compensation of county dog wardens, deputies, poundkeepers, and other employees necessary to carry out and enforce sections 955.01 to 955.261 of the Revised Code, and for the payment of animal claims as provided in sections 955.29 to 955.38 of the Revised Code, and in accordance with section 955.27 of the Revised Code. The board of county commissioners, by resolution, shall appropriate sufficient funds out of the dog and kennel fund, not more than fifteen per cent of which shall be expended by the auditor for registration tags, blanks, records, and clerk hire, for the purpose of defraying the necessary expenses of registering, seizing, impounding, and destroying dogs in accordance with sections 955.01 to 955.27 of the Revised Code, and for the purpose of covering any additional expenses incurred by the county auditor as authorized by division (F)(3) of section 955.14 of the Revised Code.

¶{63} "If the funds so appropriated in any calendar year are found by the board to be insufficient to defray the necessary cost and expense of the county dog warden in enforcing sections 955.01 to 955.27 of the Revised Code, the board, by resolution so provided, after setting aside a sum equal to the total amount of animal claims filed in that calendar year, or an amount equal to the total amount of animal claims paid or allowed the preceding year, whichever amount is larger, may appropriate further funds for the use and purpose of the county dog warden in administering those sections."

¶{64} While this statute provides that the Commissioners may pass a resolution to increase the funding, that is only done when the Commissioners deem the statutory amount insufficient. This is clearly a discretionary call. When the decision is purely within the discretion of the board, issuance of a writ is not warranted

because there is no clear legal duty. *Lewis*, supra, at ¶33 (discussing the discretionary decision to hire additional staff).

**¶{65}** Therefore, we will not issue a writ ordering the Commissioners to increase funding for the pound. Summary judgment on this issue is granted in favor of Respondents.

<u>ORDER</u>

**¶{66}** Accordingly, it is the order of this court that each party's motion for summary judgment is granted in part and denied in part.

**¶{67}** Relator is granted summary judgment on the public records request. Respondents are ordered to pay Relator statutory damages in the amount of $1,000. R.C. 149.43(C)(1). Relator is also entitled to reasonable attorney fees on this issue. Relator is ordered to file an itemized statement for attorney fees within 30 days of the time stamped date on this entry. Respondents shall have 14 days to respond. If the parties do not agree on reasonable attorney fees this court may order oral argument on the issue.

**¶{68}** Respondents are granted summary judgment on the issues of suitability of the dog pound, inhumane euthanasia, veterinarian care and funding of the dog pound. As discussed in depth above, Relator is not entitled to a writ of mandamus on these issues because either it has failed to establish that there is a clear legal duty or it has failed to show that there is violation of a clear legal duty.

**¶{69}** That said, as explained supra, Relator has established and Respondents have conceded that there is merit with some of the issues raised in the petition for a writ of mandamus. Accordingly, based on the above reasoning we issue the following orders:

> 1. Respondents shall make and maintain records as is required by Revised Code Chapter 955.
>
> 2. Respondents shall comply fully with R.C. 955.12, including the mandate that the owner of a seized and impounded dog to be notified by certified of mail of the dog's seizure and impoundment and of the ability of the owner to redeem the animal.

3. Respondents shall hold all impounded animals for the required redemption periods specified in Ohio Revised Code Chapter 955. Respondents shall also make the statutorily required efforts to place unclaimed animals in research facilities prior to destruction as is provided in Ohio Revised Code Chapter 955.

4. Respondents shall observe and post hours of operation and shall post a public phone number for the pound. It is within Respondents' discretion to limit public access to the pound for public safety and security concerns.

¶{70} IT IS SO ORDERED.

¶{71} Final order. Clerk to serve notice as provided by the Civil Rules.

Vukovich, J., concurs.
Waite, P.J., concurs.
DeGenaro, J., concurs.